## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2019, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennie Scott
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: the Termination of the Parent-Child Relationship of: S.J. Sy.J., Sy'B.J., (minor children);

L.J. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

October 30, 2019

Court of Appeals Case No. 19A-JT-755

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge

Trial Court Cause No.
18C02-1805-JT-42
18C02-1805-JT-43
18C02-1805-JT-44

**Pyle, Judge.**

# Statement of the Case

L.J. ("Mother") appeals the termination of the parent-child relationship with her children S.J. ("S.J."), Sy.J. ("Sy.J."), and Sy'B.J. ("Sy'B.J."), (collectively "the children").[1] She contends that: (1) the trial court erred in denying her oral motion to dismiss the petition for untimeliness of the factfinding hearing; and (2) there is insufficient evidence to support the terminations. Specifically, Mother argues that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (a) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home will not be remedied; (b) a continuation of the parent-child relationship poses a threat to the children's well-being; (c) termination of the parent-child relationship is in the children's best interests; and (d) adoption was a satisfactory plan for the children's care and treatment. Concluding that: (1) Mother has waived her right to challenge the untimeliness of the factfinding hearing; and (2) there is sufficient evidence to support the termination of the parent-child relationships, we affirm the trial court's judgment.

We affirm.

---

[1] The children's father ("Father") is not a party to this appeal.

# Issues

1. Whether Mother has waived her right to challenge the untimeliness of the factfinding hearing.

2. Whether there is sufficient evidence to support the terminations.

# Decision

[2] Mother is the parent of S.J., who was born in September 2008; Sy.J., who was born in May 2007; Sy'B.J., who was born in November 2004. In October 2016, DCS filed petitions alleging that the children were in need of services ("CHINS") because: (1) they had been absent from school on more than half of the scheduled school days; (2) they had been tardy to school on eleven occasions; (3) Mother and Father had an ongoing struggle to maintain suitable housing; (4) sixteen family members resided in the family's home;[2] (5) Father was recovering from a debilitating stroke and alcoholism; and (6) Mother and Father had a twenty-year history with DCS that included nine prior substantiations. The children were not removed from the home at that time.

[3] The next month, in November 2016, the trial court found an emergency existed because of Mother's drug use, the educational neglect of the children, and Father's medical restrictions. Based upon the emergency, the trial authorized DCS to take the children into custody and place them in foster care. In December 2016, Mother admitted that her children were CHINS. After a

---

[2] Mother subsequently admitted that there were twelve family members living in the family's home.

dispositional hearing, in February 2017, the trial court ordered Mother to: (1) maintain suitable housing; (2) abstain from the use of illegal controlled substances; (3) submit to random drug screens; (4) complete a substance abuse assessment, follow all assessment recommendations, and successfully complete all treatment programs.

[4] Two years later, in April 2018, the trial court found that Mother had not complied with its dispositional order. Specifically, the court found that although Mother had completed a substance abuse assessment, she had not successfully completed the recommended treatment. The court further found that Mother had not maintained suitable housing or abstained from the use of illegal drugs.

[5] The following month, on May 16, 2018, DCS filed a petition to terminate Mother's parental rights and requested a hearing. The trial court scheduled the factfinding hearing for September 20, 2018, which was 127 days from the date that the petition had been filed. None of the parties objected to the scheduled date.

[6] At the end of the September 20 hearing, the trial court scheduled the hearing to be completed on December 13, 2018, which was 211 days after the petition had been filed. None of the parties objected to the date. The December 2018 hearing was scheduled to begin at 1:30 p.m. Mother asked whether the hearing would include the full half-day and whether she would be able to call any

witnesses. The trial court responded that the hearing included the full-half day and that Mother would "absolutely" be able to call witnesses. (Tr. at 79).

[7] At the beginning of the December 2018 hearing, Father's counsel made an oral motion to dismiss the case pursuant to INDIANA CODE § 31-35-2-6, arguing that it had been more than 180 days since the termination petition had been filed. Mother's counsel stated that Mother "would like to join in that motion." (Tr. 83). The trial court denied the motion.

[8] Testimony at the termination hearing revealed that Mother had completed a substance abuse assessment in December 2016. At that time, the assessor had recommended that Mother participate in an inpatient detoxification program to be followed by an intensive outpatient drug treatment program because of her daily use of methamphetamine. The testimony further revealed that Mother had not followed the treatment recommendation.

[9] Mother completed two additional substance abuse assessments in 2017. Both of those assessors had recommended that Mother attend an inpatient drug treatment program. Mother again failed to follow the recommendations. Mother completed a fourth substance abuse assessment in March 2018. At that time Mother's drug use had become more severe because Mother had begun taking opiates, including heroin, in addition to the methamphetamine. The assessor again recommended an inpatient detoxification program to be followed by an intensive outpatient drug treatment program. Mother again failed to

follow the treatment recommendation. In addition, during the pendency of the proceedings, all of Mother's drug screens were positive.

[10] Family Case Manager Carrie Emmons ("FCM Emmons") testified that she had been assigned to the case since November 2016. According to FCM Emmons, five of Mother's children had initially been involved in the case. One of the children had aged out and voluntarily left services and another had opted to enter a collaborative care program. FCM Emmons explained that the reason for the children's removal was educational neglect and Mother's substance use. Mother had told FCM Emmons that she was trying to stop using drugs but that she had been unable to do so. FCM Emmons further testified that Mother had not had stable housing for the previous year, and that the three children had been in foster care since November 2016. The permanency plan for the children was adoption.

[11] In addition, the Court-Appointed Special Advocate ("CASA") told the trial court that termination was in the children's best interests so that they could be adopted. The CASA also told the trial court that Mother had not "engaged in services in any meaningful way over the course of the last couple years, and um, [was] not in any position to care for the children[.]" (Tr. at 132).

[12] Following the hearing, the trial court issued orders terminating Mother's parental rights to each of her three children. Mother now appeals the terminations.

# Decision

Mother argues that: (1) the trial court erred in denying her oral motion to dismiss the petition for untimeliness of the factfinding hearing; and (2) there is insufficient evidence to support the terminations. We address each of her arguments in turn.

## 1. Motion to Dismiss

Mother first challenges the denial of her oral motion to dismiss the termination petition for untimeliness of the factfinding hearing. INDIANA CODE § 31-35-2-6 sets forth the timeline for conducting factfinding hearings in termination of parental rights proceedings, where, as here, a party requests a hearing. The statute provides as follows:

> (a) Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter, the person filing the petition shall request the court to set the petition for a hearing. Whenever a hearing is requested under this chapter, the court shall:
>
>> (1) commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter; and
>>
>> (2) complete a hearing on the petition not more than one hundred and eighty (180) days after a petition is filed under this chapter.
>
> (b) If a hearing is not held within the time set forth in subsection (a), upon filing a motion with the court by a party, the court shall dismiss the petition to terminate the parent-child relationship without prejudice.

IND. CODE § 31-35-2-6.

[14] Here, the factfinding hearing did not commence within 90 days of the filing of the filing of the petition and the hearing request was not completed within 180 days of the filing of the petition. Rather, as Mother points out, the hearing began 127 days after the petition had been filed and the hearing had been requested and was completed 211 days after the petition had been filed. Mother contends that because the factfinding hearing was untimely, the trial court should have granted her motion to dismiss.

[15] We addressed this issue in *In the Matter of the Termination of the Parent-Child Relationship of N.C.*, 83 N.E.3d 1265 (Ind. Ct. App. 2017). There, the termination factfinding hearing was held in March 2017, 222 days after the filing of the termination petition. Referring to INDIANA CODE § 31-35-2-6 , the father orally moved for the dismissal of the termination petition at the outset of the March 2017 factfinding hearing. The trial court both denied the motion and terminated the father's parental rights after a hearing. On appeal, the father argued that the trial court had erred in denying his motion to dismiss.

[16] Another panel of this Court first pointed out that the plain language of the statute contemplates the "filing" of a motion with the court. *Id.* at 1267. The father, however, had filed no written motion. Rather, he had orally moved for dismissal at the outset of the factfinding hearing. Moreover, this Court pointed out that the father had acquiesced to the factfinding hearing date when it was scheduled in December 2016. *Id.* Specifically, when the court reporter at the

December 2016 hearing had suggested the March 2017 hearing date, the father's counsel had responded: "That sounds good." *Id.* The father's counsel had then asked about the specific length of the factfinding hearing. He never objected to the date. We held that, even though the factfinding hearing date had fallen outside the statutory 180 days, the father had waived his right to challenge the setting of the date. *Id.*

[17] Here, as in *N.C.*, Mother orally moved for the petition's dismissal at the beginning of the December 2018 hearing, but she filed no written motion. In addition, when the trial court scheduled the factfinding hearing outside the statutory 90 days, Mother's counsel asked about procedural aspects of the hearing but never objected to the hearing date. Thus, Mother has waived her right to challenge the setting of the hearing date. *See e.g., N.C.*, 83 N.E.2d at 1267.

## 2. Sufficiency of the Evidence

[18] The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re J.W., Jr.*, 27 N.E.3d 1185, 1187-88 (Ind. Ct. App. 2015), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Id.* at 1188. Termination of the parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better

home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.*

[19] Before an involuntary termination of parental rights may occur, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1230 (Ind. 2013).

[20] When reviewing a termination of parental rights, this Court will not reweigh the evidence or judge the credibility of the witnesses. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016). We consider only the evidence and any reasonable inferences to be drawn therefrom that support the judgment and give due regard to the

trial court's opportunity to judge the credibility of the witnesses firsthand. *K.T.K.*, 989 N.E.2d at 1229.

[21] Mother first argues that DCS failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to the children's well-being. However, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.2d 212, 220 (Ind. Ct. App. 2010), *trans. dismissed*. We therefore discuss only whether there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside the home will not be remedied.

[22] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include

parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.*

[23] Here, our review of the evidence and any reasonable inferences to be drawn therefrom that support the judgment reveals that the children were removed from the parents' home because of educational neglect and Mother's drug use. At the time of the termination hearing, Mother was still using methamphetamine and had begun using opiates. Mother had completed four substance abuse assessments during the course of the proceedings. One assessor had twice recommended inpatient detoxification and intensive outpatient substance abuse programs. Other assessors had recommended inpatient treatment programs. Mother failed to follow the recommendations and had positive drug screens throughout the proceedings. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied. We find no error.

[24] Mother also argues that there is insufficient evidence that the termination was in the children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004),

*trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "'A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest.'" *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000) (quoting *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied, superseded by rule on other grounds*). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[25] Here, our review of the evidence reveals that Mother has historically been unable to provide housing, stability, and supervision for her children and was unable to provide the same at the time of the termination hearing. In addition, the CASA told the trial court that termination was in the children's best interests. The testimony of this service provider, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in the children's best interests.

[26] Last, Mother argues that DCS does not have a satisfactory plan for the children's care and treatment. This Court has previously explained that the plan for the care and treatment of the child need not be detailed, so long as it

offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *In re L.B.,* 889 N.E.2d 326, 341 (Ind. Ct. App. 2008). Here, the DCS caseworker testified the plan for the care and treatment of the children is adoption. This is a satisfactory plan. *See In re A.N.J.,* 690 N.E.2d 716, 722 (Ind. Ct. App. 1997).

[27] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[28] Affirmed.

Robb, J., and Mathias, J., concur.